(Decided 10th December, 1869.)

ORVILLE HORWITZ, Garnishee of JAMES F. PURVIS and JAMES F. PURVIS, JR., *vs.* JACOB ELLINGER. ORVILLE HORWITZ, Claimant of Property attached of JAMES F. PURVIS and JAMES F. PURVIS, JR., *vs.* JACOB ELLINGER.

*Attachment—Act of* 1864, *ch.* 306—*Relation between a Banker and a Depositor.*

On the 2d of April, 1867, the plaintiff made a deposit with the defendants, who were doing business as bankers in the city of Baltimore; subsequently, on the same day, the banking-house closed, and was never opened again for business; and the members of the firm, regard-

Horwitz, Garnishee, *vs.* Ellinger.·

ing themselves as insolvent, on the following day made an assignment of all their property for the benefit of their creditors. A few days later the depositor sued out an attachment under the Act of 1864, ch. 306, based on an allegation of fraud in the grantors of the deed of trust. The attachment was laid in the hands of the trustee, who appeared as garnishee and claimant, and made defence. HELD:

That the depositor stood in no better relation to the bankers than other ordinary creditors, and was not entitled to a judgment of condemnation of the property attached.

The Act of 1864, ch. 306, providing for attachments on original process, is only a remedial act; it gives the creditor no lien, and only provides a more speedy remedy in the cases enumerated, than before existed.

APPEALS from the Superior Court of Baltimore City.

At the trial below, the plaintiff offered the following prayers:

1. If the jury find from the evidence, that the defendants as bankers, did on the morning of April 2d, 1867, receive from the plaintiff on deposit, the money, for the recovery of which this suit is instituted, and at the time of so receiving it, were insolvent, and knew themselves to be so, and had no reasonable expectation of being able to repay the said money, when the same might thereafter be called for in the course of business, and shall find said condition of insolvency and want of reasonable expectation of repayment were unknown to the plaintiff, and could not by the exercise of ordinary diligence have been ascertained by him, then the receipt of said moneys was in law a fraud on the plaintiff, and the defendants fraudulently contracted the debt and incurred the obligation in controversy in this case.

2. If the jury shall find the facts set forth in the first prayer, and further find that on the afternoon of the said 2d April, 1867, the defendants advised with Mr. Horwitz, the claimant and garnishee, as their counsel, in regard to the execution of the deed of trust to said Horwitz, given in evidence, and on the next morning executed and deliv-

ered the said deed to him, the jury are at liberty to find from these facts and the circumstances surrounding the transaction, if they believe such facts and circumstances justify the conclusion, that the execution and delivery of said deed were, and were meant to be, a consummation of the fraud committed by receiving the plaintiff's money, and if they so find, the plaintiff is entitled to recover on the issues joined on the first, second and fourth pleas of the garnishee in his case, and upon the issues joined on the two pleas by the claimant, pleaded in the said claimant's case.

And the following prayers were offered by the claimant and garnishee:

1. The garnishee prays the Court to instruct the jury, that if they believe from the evidence that the deed dated April 3d, 1867, offered in evidence, was duly executed and recorded on that day, then the plaintiff is not entitled to recover under the writ of attachment and proceedings in this cause, notwithstanding, the jury may believe from the evidence that the plaintiff deposited with the defendants the sum of $5,335 on the 2d of April, 1867, and also believe all the other evidence in the cause tending to support the case of the plaintiff. (Same prayer for claimant.)

2. The garnishee and claimant prays the Court to instruct the jury, that if they believe from the evidence that the whole amount of money received by the firm of Purvis & Co. on the 2d of April, 1867, inclusive of the sums of money deposited on that day by the plaintiff, after deducting therefrom the sums of money paid away by said firm on that day, as detailed by the witnesses, was deposited at the close of the business hour of that day in the Bank of Commerce, and also believe that on the next day the deed of April 3d, 1867, offered in evidence, was duly executed and recorded, and that no part of said money so received as aforesaid, came into the possession of the trustee under said deed, then, under the

writ of attachment and proceedings in this cause, the plaintiff is not entitled to maintain the suit against the funds or property that did come into the possession of, or was conveyed to said trustee by virtue of said deed, notwithstanding they may believe that at the time of the said receipt of the plaintiff's deposit, as proved by the witnesses, the firm was insolvent, and all the other facts offered on the part of the plaintiff to maintain the issue on his side.

3. The claimant prays the Court to instruct the jury, that if they believe from the evidence that the attachment in this case was made on the 9th day of April, 1867, and that James F. Purvis, one of the defendants, did make application to the judge of the District Court of the United States for the District of Maryland, for the benefit of the Act entitled "An Act to establish a uniform system of bankruptcy throughout the United States," on the 5th day of August, 1867, at 10 o'clock, A.M., and that said Purvis was duly adjudged a bankrupt under said application, and that an assignee was appointed and qualified under said application, and that all the estate, real and personal of said bankrupt, was assigned to said assignee by the judge of said Court under his hand, then, under the writ of attachment and proceedings in this cause, they must find for the claimant as to all the property named in the schedule contained in these proceedings, provided they believe that said property was the separate estate and property of said James F. Purvis at the time of making said application.

The Court (Dobbin, J.,) granted the prayers of the plaintiff and rejected those of the claimant and garnishee. To this ruling the claimant and garnishee excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Orville Horwitz* and *Wm. S. Waters*, for the appellant.

The plaintiff by his very claim and account establishes two things: First, the relation of banker and customer between the defendants and himself, and second, the existence of a subsisting indebtedness, for which, "having the right to become a plaintiff," he brings his suit against the defendants under the Attachment Act of 1864.

What is the law applicable to this state of facts?

The relationship of depositor and banker is that of creditor and debtor, and the contract on the part of the banker is to pay on a *future demand,* on draft of depositor. *Pott vs. Clegg,* 16 *M. & W.,* 327 ; *Hill vs. Foley,* 2 *Hou. Lords Cases,* 36, 37–44 ; *Thompson vs. Riggs,* 5 *Wallace,* 678 ; *Marine Bank vs. Fulton Bank,* 2 *Wallace,* 256. And without such *demand* no suit can be brought. *Johnson vs. Farmers' Bank,* 1 *Harrington,* 119 ; *Downey vs. Phenix Bank of Charleston,* 6 *Hill,* 297–299.

The obligation being to pay, upon a future demand, to constitute a fraud in the contract itself, there must be an *actual intent* not to return the money, existing, at the the time it is received, in the minds of the defendants. This intent is a question to be submitted to the jury. *Bristol vs. Wilsmore & Page,* 1 *B. & C.,* 514 ; *Ash vs. Annan & Putnam,* 1 *Hill,* 303 ; *Benjamin on Sales,* 315 ; *Powell vs. Bradley,* 9 *Gill,* 270.

If it be true that there must be an actual intent *not to return* the money, how can that intent be imputed to parties who had no hand in the transaction, with whom it was not made, and who, for all that appears, were not aware of the actual deposit at any time prior to the institution of this suit?

But the conclusive answer to the first prayer of the plaintiff is, that *this is a proceeding under the Act of* 1864— and *that that Act requires actual fraud*—fraud in fact—and *that* fraud must exist at the inception of the contract. *Clarke, Dodge, et al., vs. Meixsell & Grafton,* 29 *Md.,* 221.

The plaintiff's second prayer is liable to all the objections to the first prayer; and there is no evidence to support it. There is no proof "that the defendants advised with Mr. Horwitz, as their counsel, in regard to the execution of the deed of trust to said Horwitz." The only evidence on the subject is the testimony of Mr. Purvis, who says that "when he found he could not make his bank account good, he determined that afternoon to make a deed of trust of all he had in the world for the benefit of his creditors equally, and for that purpose called in Mr. Horwitz, to whom he first applied about 4 P.M."

There was no *consultation;* there was *no advising with Mr. Horwitz as counsel* in regard to the execution of the deed of trust; but Mr. Purvis himself determined, on finding he could not make his bank account good, *without delay and without hesitation,* to do what he supposed was the proper and most honest thing for him to do, viz.: *to give up all he had in the world for the equal benefit of all his creditors,* without preference or priority, and *for that purpose,* and that purpose only, he called on Mr. Horwitz about 4 P.M.

The recovery of the plaintiff in this case requires the finding by the jury of two distinct frauds. They must first find that the debt was fraudulently contracted, in order to give the plaintiff a right to the remedy he has selected, and they must then find that the deed in question was fraudulent.

If the jury, from the evidence, found the debt fraudulently contracted, then *that* fraud needed no consummation to aid the plaintiff, and no matter to what extent consummated, it can only give him the right to the attachment.

The deed of trust is good against all the world. *Baldwin vs. Peet,* 22 *Texas,* 708; *Covanhovan vs. Hart,* 21 *Penn.,* 500; *Chandler vs. Calwell,* 17 *Ind.,* 256; *Malcolm vs. Hall,* 9 *Gill,* 177; *Pike vs. Bacon,* 8 *Shep.,* 280.

If the deed be void as against any creditor, it is because it is in contravention of the Statute of Elizabeth, that is to say, " was intended to hinder, delay or defraud the creditors of grantors," which, *as a fact*, should have been submitted to the jury.

But it is not true that the deed defeated the remedy in reference to the particular *fund* deposited. If the money were obtained fraudulently, it can be followed in equity, but not by attachment. Attachment proceedings are strictly construed. A Court of Equity will not aid them. *Stein vs. Merrifield; Ex-parte Duncan, et al.,* 19 *Md.,* 233.

*Charles Marshall* and *I. Nevett Steele,* for the appellee.

The plaintiff's first prayer sets forth a case of a debt fraudulently contracted. Had the defendants obtained goods under the circumstances set forth in that prayer, there is no doubt but that they would have acquired no title as against the plaintiff. *Powell, &c., vs. Bradlee,* 9 *G. & J.,* 220 ; *Hall vs. Hicks,* 21 *Md.,* 418.

It would be sufficient for the jury to have found that the defendants had no reasonable expectation of returning the money, but we have proved that they actually knew they must stop early in the day. Yet they continued to receive deposits until 3 P.M.

Were not Purvis & Co. guilty of fraud in obtaining the plaintiff's money, when they continued to allow him to believe that they were in the condition which his previous knowledge of and dealings with them gave him a right to believe them to be, and induced him to believe them to be, when they were perfectly aware that they were no longer in that condition? Was it not fraudulent to take money under an agreement implied from the character of their business, and previous dealings with the plaintiff, that it would be repaid on his check, when they knew all the time that the money was never to be repaid, except in the shape of dividends from an insolvent estate?

Such an act cannot be regarded as honest, or as anything less than a mere cheat.

The second prayer requires the jury to find all the facts set forth in the first, and the further fact that the deed of trust was, and was meant to be, a consummation of the fraud perpetrated in contracting the obligation.

The two prayers taken together present the question whether a conveyance otherwise unobjectionable, if made with intent to consummate a fraud previously committed, has any validity as against the person so defrauded. It imposes upon the plaintiff the obligation of showing that the deed of trust, although made apparently with honest intent as to other creditors, was made with fraudulent intent towards the plaintiff.

A deed good on its face cannot be rendered void or fraudulent by a fraudulent act done before or after its execution, not connected with it. A man may make a valid deed even when the purpose of that deed is to prevent one creditor from getting satisfaction, and to give a preference to another. That is a right which flows from the power to prefer.

But a deed otherwise good may be rendered void by frauds perpetrated before or after its execution, if it be found that the deed was in fact so connected with such frauds as to constitute a part of them.

It is well settled that a deed otherwise good, if made with the intent on the part of the grantor to defraud subsequent creditors, is void as to such creditors.

It is equally well settled that fraudulent intent in making a deed apparently honest, may be inferred from subsequent acts. *Cathcart vs. Robinson,* 5 *Peters,* 264, 279 ; *Moore vs. Blondheim,* 19 *Md.,* 172; *Banks vs. Williams,* 11 *Md.,* 198 ; *Schaferman vs. O'Brien,* 28 *Md.,* 575.

There is no difference in principle between executing a deed with intent to defraud subsequent creditors, and de-

frauding a creditor with intent to consummate the fraud by the subsequent execution of a deed. The whole transaction was a trick. As to the plaintiff, the deed was not *bonâ fide.* *Cadogan vs. Kennett, Cowper,* 342, 434 ; 1 *Story Eq. Ju., sec.* 353 ; *United States vs. Howe,* 3 *Cranch,* 73.

The Act of 1864 gives a creditor who has been defrauded like rights to obtain satisfaction out of the property of the fraudulent debtor, to those which the owner of specific property before the Act had against a fraudulent vendee. The law itself puts the defrauded creditor upon a different footing from the creditor who has not been defrauded. It is not necessary that at the time they received the money, they contemplated making this fraudulent deed. If they designed to perpetrate a fraud on the plaintiff, any instrumentality they adopted was, as to him, tainted with the fraud, and a mere nullity. The deed is void, if even but the *partial* execution of a purpose to defraud him. *Moore vs. Blondheim,* 19 *Md.,* 175 ; *Spear vs. Wardell,* 1 *Comstock,* 144 ; *Johnson vs. Whitwell,* 7 *Pick.,* 74.

There was evidence from which the jury might find that the defendants defrauded the plaintiff, and executed the deed of trust with intent thereby to consummate their fraud. If the jury so found upon sufficient evidence, the deed as to the plaintiff was no deed.

The object of this suit is not to recover specific property, but to recover a debt fraudulently contracted. The effort to accomplish this is sought to be defeated by a deed of trust, apparently *bonâ fide,* but which we show to have been executed for the purpose of consummating the fraud itself. The question is, therefore, not whether the particular money passed to the assignee, but, did *anything* pass to him by such a deed, as against the plaintiff?

ALVEY, J., delivered the opinion of the Court.

Prior to, and on the 2d of April, 1867, James F. Purvis

and James F. Purvis, Jr., under the firm style of Purvis & Co., were doing business in the city of Baltimore as bankers, and on that day (the 2d of April, 1867,) the appellee, being one of the customers of the house, deposited with it, in the usual way, the sum of $5,335.22. This deposit was made shortly after 1 o'clock, and was subject to a small check that had been drawn by the depositor some few hours before, and which, being paid, reduced the appellee's credit to $5,101.88, the amount sued for in this case.

At the usual hour, on the day of the deposit, the banking house closed, and was never again opened for business, and the members of the firm, regarding themselves as insolvent, and unable to meet their liabilities, at once set about making a general assignment of all their property for the benefit of their creditors, without preference, except such as is made and recognized by law, in the application of the partnership and separate funds to the payment of partnership and separate debts respectively, by way of priority. Such assignment was made to Mr. Horwitz, the appellant, as trustee, on the 3d of April, 1867, and he at once accepted the trust, and assumed control of all the property assigned.

This having been done, the appellee, on the 5th of April, 1867, caused an attachment, under the provisions of the Act of 1864, ch. 306, to be issued against the assignors, and, as grounds for the process set forth in the affidavit, that he had good reason to believe that the defendants had assigned, disposed of, or concealed, their property, or some portion thereof, with intent to defraud their creditors ; and that they fraudulently contracted the debt, or incurred the obligation upon which suit was brought.

The return to the attachment was, that it had been " laid in the hands of Orville Horwitz, Esq., on the 9th day of April, 1867," and " attached, as per schedule."

The schedule embraced a number of lots of ground, which were seized and taken as the lands and tenements of James F. Purvis, on the 9th of April, 1867. And on the return being made, Horwitz appeared as garnishee, and as claimant, and defended against judgment of condemnation.

He interposed two series of pleas: the first as garnishee, and the second as claimant.

As garnishee, he pleaded: 1st. That the defendants did not promise as alleged; 2d. That he had no goods of the defendants; 3d. That the defendants had not disposed of or concealed their property, with an intent to defraud their creditors; 4th. That the defendants did not fraudulently contract the debt as alleged.

As claimant, he pleaded: 1st. That the property in the schedule mentioned was the sole property of James F. Purvis, Sr., and that on the 3d day of April, 1867, he conveyed the same to the claimant by a good and sufficient deed; 2d. The bankruptcy of James F. Purvis, Sr., one of the defendants, and the appointment of the claimant assignee, since the attachment.

To the several pleas thus pleaded, issue was joined, and they were all tried together as one case.

At the trial, all the facts and circumstances attending the deposit made by the appellee, of the insolvent condition of the defendants, and of the making of the deed of the 3d of April, were laid before the jury. And the Court being required to instruct the jury by the respective parties, granted the two prayers offered by the appellee, and refused those offered by the appellant. It is to this action of the Court that exception is taken.

In regard to the first prayer that was granted on behalf of the appellee, we think it unobjectionable. It embraces all the essential elements to render the contract fraudulent. But, as applied to this case, it is decisive of nothing, except the question of fraud, in obtaining the appellee's money.

Conceding the money to have been deposited under such circumstances as to make it fraudulent in the defendants to receive it, in what relation does the depositor stand to the defendants as bankers? Is it any other than that of an ordinary creditor?

The appellee knew that the money, so soon as deposited, would cease to be his, and that its identity would be lost so soon as it reached the till of the defendants. It at once became their money, to be used as they pleased. They were guilty of no breach of trust by employing it as their own. They were not bound to keep it, or deal with it as the money of the appellee; but were only bound to repay him on demand, a sum equivalent to that paid in. Indeed, the proceeding adopted against the defendants concedes the relation of debtor and creditor to exist, for the demand is not for the specific money deposited, but for an equivalent amount to the appellee's credit in account with the defendants. Nor does the Act of Assembly, under which the proceedings are taken, give its aid to the appellee in any other character than as creditor.

Taking the relation of debtor and creditor to exist between the parties, what is the predicament of the appellee in regard to the deed of assignment of the 3d of April, 1867, which is conceded to be, by its terms and conditions, such as is authorized by law? He sought to avoid the effect of the deed, as against himself, by treating it as the consummation of the fraud by which his money was obtained from him on the day previous to its date. In this view, the second prayer was offered, whereby the jury were instructed that they were at liberty, upon consideration of all the facts and circumstances surrounding the transaction, to find "that the execution and delivery of said deed were, and were meant to be, a consummation of the fraud committed by receiving the plaintiff's money, and if they so find, the plaintiff is entitled to recover on

the issues joined," &c.   Should such an instruction have been granted ?

It is clear, if the money sued for was obtained from the appellee, by means of a fraudulent contract, it required no consummation, by the subsequent execution of the deed, to entitle him to the benefit of the provisions of the Act of 1864.   If, on the contrary, it was not so obtained, the subsequent execution of the deed, with whatever motive, would not render fraudulent the contract previously made. The contract of deposit, and the deed of assignment, are two different and distinct acts, and their validity must be determined according to their respective merits. .

The assignment, to constitute a sufficient ground of itself to maintain the attachment against the defendants, under the Act of 1864, must have been made *with an intent to defraud their creditors.*   But a general assignment, for the benefit of all creditors, such as the one before us, is not denounced by the law as fraudulent, but, on the contrary, sanctioned and approved.   That being so, is it competent to the appellee to vacate this assignment as to himself, while it may be good as against everybody else, by showing some particular motive in the assignors in making it ?   Clearly not.   We are dealing with the *act* of the parties, and if that be such as the law authorizes and approves, the secret motives that prompted it are wholly immaterial.   *Pike vs. Bacon,* 21 *Me.,* 280, 285 ; *Covanhovan vs. Hart,* 21 *Penn.,* 495, 500.

It may have been, and most likely was, the purpose of the assignors in making the deed, to avoid the preferences that might have been obtained by attachment, in a race of eager diligence by disappointed creditors.   Such is generally the motive to the making of such an assignment. But though such was the motive, or even if it was to prevent the appellee from resorting to process to obtain such preference, the assignment is not the less valid.   It was

the right of the assignors to apply their property to the equal payment of all their creditors, and the appellee being in the category of creditor, can have no more favorable standing in respect to the property thus attempted to be applied than any other of his class; and because his claim may have been specially in the contemplation of the assignors when making the deed, it affords him no ground to set it aside.

But it is contended for the appellee that the debt being fraudulently contracted, his right to proceed by attachment is fixed and indefeasible, and that it was not within the power of the debtor to defeat such right.

That may be conceded. The right to sue out the attachment may exist, but the right to seize other people's property under it is quite a different thing.

The Act of 1864, ch. 306, under which the attachment in this case was issued, is only a remedial act. It gives the creditor no lien, and only provides a more speedy remedy in the cases enumerated than before existed. Whatever assignment of property, therefore, that would have defeated a seizure under an attachment before that Act, will be equally effectual to defeat a seizure of property under an attachment sued out by virtue of its peculiar provisions. Any other construction would be most inconvenient and mischievous.

Upon the appellee's assumption, the question is, did the fraudulent making of the previous contract deprive the debtors of the right to make a general assignment of all their property for the equal benefit of all their creditors, including the appellee? That it did not, we think, is entirely free from doubt. To hold that it did, would in a great measure defeat the policy of the law in allowing and encouraging insolvent debtors to devote, by assignment, all their property to an equal distribution among their creditors. Few cases would occur in which some

Horwitz, Garnishee, *vs.* Ellinger.

creditor, in order to gain a preference, would not at least attempt to make it appear that there had been a want of *bonâ fides* in the debtor's dealing with him. To open the door to such an inquiry, and make the validity of the assignment depend upon the establishment of such a fact, would at once beget litigious struggles among creditors, in which those conscientious would often be victimized to the less scrupulous litigants.

Entertaining these views in regard to the effect of the deed of assignment on the position and claim of the appellee as creditor, we think it clear that the court below was in error in granting his second prayer, already referred to. And it results necessarily, from what we have said, that we are of opinion that the first prayer of the appellant should have been granted.

As to the other questions made upon the record, and presented in argument, some of which are interesting and important, we deem it unnecessary to decide, as the view we have taken is decisive of the case. And seeing no ground upon which the appellee could legally claim judgment of condemnation of the property mentioned in the return to the attachment, we shall reverse the judgment appealed from, without *procedendo.*

*Judgment reversed.*

(Decided 10th December, 1869.)