James S. Whedbee and John S. Dickinson, trading as Whedbee & Dickinson vs. John Stewart and Benjamin Price, Trustees, &c.

*Deed fraudulent and void under the Statute of the 13th of Elizabeth—Deed fraudulent under the Act of 1864, ch. 306. When an intent to defraud Creditors, will be imputed to the Debtor.*

A deed conveying to trustees all the property, and estate of every kind belonging to the grantors individually, and as partners, in trust for the benefit of their creditors who shall within the period of sixty days from the date of the deed, accept the benefit of the instrument, and release the grantors from their claims and demands, but which makes no disposition of the surplus that may remain in the hands of the trustees after paying the creditors who may execute releases within the time prescribed, is fraudulent and void as against creditors under the Statute of the 13th of Elizabeth, as such surplus results by implication to the grantors.

Such deed is also fraudulent within the meaning of the Act of 1864, ch. 306, and the proceeds of the property in the hands of the trustees, is liable to attachment by the creditors of the grantors.

Where a conveyance by its terms, operates to hinder, delay or defraud creditors, the intent to do so, is imputed to the parties. The fraudulent character of the instrument is a presumption of law, not depending upon extrinsic evidence.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Wm. Shepard Bryan,* for the appellants.

The deed makes a preference in favor of such of the creditors of the grantors as shall, within a period of sixty days

from its date, release the grantors from their claims and demands. It makes no disposition of the surplus that shall remain after the payment of the favored creditors. This surplus, therefore, resulted to the grantors by necessary implication. The deed was, therefore, void upon its face against the plaintiffs, who were subsisting creditors. The fraud is a conclusive presumption of law, not depending upon extrinsic evidence. Nor is it competent to consider extrinsic evidence at all in the consideration of the question of fraud in this case. *Malcolm vs. Hodges,* 8 *Md.,* 418; *Bridges vs. Hindes,* 16 *Md.,* 101; *Inloes vs. American Ex. Bank,* 11 *Md.,* 173.

The thirteenth section of Art. 48 of the Code, has no reference to the question arising in this case. This section is a re-enactment of the Act of 1854, ch. 193, sec. 13, and merely declares the existing law as decided in *Sangston vs. Gaither,* 3 *Md.,* 40, 46, 48. It enacts that certain provisions shall not avoid a deed, but it does not mean that all deeds which contain these provisions shall be good, if they are obnoxious to valid objections. The deed in *Bridges vs. Hindes,* 16 *Md.,* 101, was made after the passage of the Act of 1854, and contained the provisions mentioned in the Act, but it was nevertheless declared void, because of the objection now urged against the deed in this case.

The fraudulent character of the deed is stamped upon it by the law. The provisions were such as the law condemned. No evidence was admissible in exculpation of the conduct of the grantors in making an unlawful deed. They intended to make this deed and made it, and it is *ipso facto* a fraud. By this transaction they became obnoxious to the attachment provided by the Act of 1864, ch. 306. *Malcolm vs. Hodges,* 8 *Md.,* 418; *Bridges vs. Hindes,* 16 *Md.,* 101; *Inloes vs. Am. Ex. Bank,* 11 *Md.,* 173.

*Fredk. J. Brown,* for the appellees.

There is a distinction between deeds fraudulent in construction of law, and deeds fraudulent in fact, at least so

far as regards proceedings under the Act in question or similar Acts, and the Act of 1864, must be strictly construed and some proof of actual fraudulent intent given. The question is not whether, if a deed be obnoxious to the provisions of the statute of Elizabeth, it may not, as to any property intended to be passed by it, be pronounced void, equally for constructive as for actual fraud; nor whether a deed made with honest intentions but constructively fraudulent may not be set aside by a Court of Equity when proceedings are instituted for that purpose; the question is simply whether under the Act of Assembly some *mala fides* must not be shown before the creditor is entitled to put in motion the summary and extraordinary attachment proceedings. There has been no adjudication of this point in Maryland, but similar attachment laws prevail in other States, and we have decisions to guide us.

The attachment law of Missouri, (*Revised Statutes,* 1855, *Vol. I., ch.* 12,) provides for the institution of attachment proceedings in similar cases to those contained in our Act, among others in the 7th clause of 1st section, "where the defendant has fraudulently conveyed or assigned his property or effects so as to hinder or delay his creditors." *Gates vs. Labeaume,* 19 *Mo.,* 17; *Spencer vs. Deagle,* 34 *Mo.,* 455; *State vs. Benoist,* 37 *Mo.,* 500; *Beach vs. Baldwin,* 14 *Mo.,* 597.

It is to be observed that the words of the Missouri statute are "fraudulently assigned, *so as* to hinder," &c.; of the Maryland statute, "assigned *with intent* to defraud," &c. So that if anything, a stricter construction of our statute would be necessary. A deed technically fraudulent, which, *however unintentionally,* would work a certain *result* might be obnoxious to the Missouri statute, and yet be upheld here, unless actual *mala fides* could be shown. Attachment proceedings are in derogation of the common law, and should be strictly construed. *Thompson vs. Towson,* 1 *H. & McH.,* 504.

But supposing that the Act of 1864, in the absence of other legislation would have embraced such a constructive fraud as is here objected to, the Act of 1854, ch. 193, (Code Pub. Gen. Laws, Art. 48,) saves this deed. See the 13th section of the Article, as also of the Act—they are identical.

There had been great conflict of decisions of the Court of Appeals, as to the validity of deeds of trust containing a clause excluding non-releasing creditors. *Green vs. Trieber*, 3 *Md.*, 29. Such clauses being finally held invalid, and fatal to the deed. (*Sangston vs. Gaither*, 3 *Md.*, 40, decided December term, 1852.)

When the Act of 1854, ch. 193, was passed, the clause in question, the 13th, must be taken to have been inserted for the purpose of settling this question in a contrary sense. [Both in Pennsylvania and Virginia, assignments expressly excluding non-releasing creditors, and permitting or directing payment of surplus to the assignor, are valid. *Livingston vs. Bell*, 3 *Watts*, 198; *Mechanics' Bank vs. Gorman*, 8 *W. & S.*, 308; *Skipwith's Exec. vs. Cunningham*, 8 *Leigh*, 271; *Phippen vs. Durham*, 8 *Grat.*, 457.]

The language of this clause could not be more explicit, and would seem to be conclusive of the case.

It is admitted that *Malcolm vs. Hodges*, 8 *Md.*, 418, (decided in December term, 1855,) reaffirms the doctrine that a deed is void if it reserves the surplus after payment of releasing creditors ; but the deed attacked in that case was made in 1849, and the bill filed in 1850, and the Act of 1854, was accordingly not discussed.

Same remark applies to *Peters vs. Cunningham*, 10 *Md.*, 554, in which case moreover, there was an admission of record, that the deed was void.

The next two cases, *Triebert vs. Burgess*, 11 *Md.*, 452, and *Maennel vs. Murdock*, 13 *Md.*, 164, may be quoted to show that the Act of 1854, ch. 193, only applies to cases of *technical insolvency*—cases in which there have been pe-

titions for the benefit of that Act. But the first case will be found to have been decided simply as to the effect of sections 6, 7, 8 and 10 of that Act, which were separately and carefully discussed by Judge ECCLESTON, (pp. 462–3.) "The sections in the Act of 1854, which have been referred to," says the Court, relate "only to cases of insolvency, in which there have been petitions for the benefit of that Act." "The provisions of the Insolvent Act of 1854, ch. 193, which make void conveyances, &c., for fraud, or for giving undue preferences, relate only to cases of insolvency in which there have been petitions for the benefit of that Act." The one clause in that Act which *makes good* conveyances, was not discussed. This being so, the statement in *Maennel vs. Murdock*, 13 *Md.*, 178, that "*the Act of* 1854, *ch.* 193, was declared in *Triebert vs. Burgess*, to have no application to a case in which there has been no petition for the benefit of the insolvent laws," is manifestly too unqualified.

But the case of *Maennel vs. Murdock*, involved the construction of the 13th section, and may be relied on by the appellants as settling that the whole Act, including that section, applies only to "cases where there has been a petition," &c. The head note, and even a cursory reading of the opinion of the Court, would lead one to that conclusion. A careful examination of the precise point decided will show that it is still an open question.

From the argument of counsel (pp. 170 and 173,) and opinion of the Court (p. 177,) it will be seen that the 13th section was used to establish constructively, a meaning very different from its plain and direct one. The deed in *Maennel vs. Murdock*, while it was open to an objection to which our deed is not open, inasmuch as by its 12th clause it preferred certain creditors by name, was not obnoxious to the other objection, now made against our deed, of expressly or impliedly excluding non-releasing creditors, for they were specially taken care of by the 14th

clause. So the 13th section of the Act was not invoked to *protect* the deed—it needed no protection on that side— but to *attack* the deed, the opponents of it founding their argument solely on the use of the word " generally," in that section. The argument was simply this :

The 13th section of the Act of 1854, saves all " deeds for the benefit of creditors *generally*, notwithstanding certain questionable clauses ; this is not a deed for the benefit of creditors *generally*, inasmuch as an individual and a firm are preferred in it ; *ergo*, such a deed as this is, by that section, impliedly *condemned.*"

The very obvious answer to this was made. " This law [Act of 1854,] does not declare that all other deeds than those mentioned in its 13th section *shall be void*," and the opinion of the Court, sustains the answer. "Neither the case in 9 *Gill*, nor the Act of Assembly, is sufficient to *invalidate* this part of the deed." This is all that it was necessary for the Court to say in deciding the question before it, and the dictum as to the effect of the *whole Act* seems to have been made solely on the authority of *Triebert vs. Burgess*, without a careful examination of that case.

It is admitted that the case of *Bridges vs. Hindes*, 16 *Md.*, 101, decided in 1860, affirms the doctrine of *Malcolm vs. Hodges*, that a reservation of the surplus to the grantor after paying releasing creditors, avoids a deed. The 13th section of the Act of 1854, ch. 193, was not alluded to by counsel or Court. While this silence seems certainly significant, it is possible that the section may have been simply overlooked, and it is possible also that a mistaken impression, as to the precise extent to which the decision of this Court, in *Maennel vs. Murdock*, went, may have cut off all consideration of it. However that may be, we feel at liberty to invite now a direct adjudication of this point.

But whatever may have been decided in *Maennel vs. Murdock*, the case of *Mackintosh, Garn. &c. vs. Corner*,

33 *Md.*, 598, would seem to be conclusive of this case. The 13th section of Article 48 of the Code is there held binding and applicable, *although it was a case in which there was no petition for the benefit of the insolvent laws.*

BARTOL, C. J., delivered the opinion of the Court.

The attachment proceedings in this case were instituted by the appellants, under the Act of 1864, ch. 306. Their affidavit alleged "that they have good reason to believe that (their debtors,) Ahlsleger & Hopper, have assigned and disposed of their property, or some portion thereof, with the intention of defrauding their creditors."

The attachment was laid in the hands of the appellees, as garnishees, who appeared and pleaded.

*First.*—"*Nulla Bona.*"

*Second.*—They denied the fraud, and the intent to defraud, alleged by the plaintiffs to have been committed against the creditors generally of said Ahlsleger & Hopper.

*Third.*—They denied the fraud, and intent to defraud, in regard to the alleged debt of the plaintiffs.

On these pleas, issues were joined, and the case was tried by consent, before the Court without a jury.

There was no dispute as to the validity and amount of the debt due the appellants by Ahlsleger & Hopper.

The only evidence offered was the deed of trust from Ahlsleger & Hopper to the appellees, and the admission of counsel that the garnishees have now in their hands, from the proceeds of property mentioned in the deed of trust, a sum of money more than sufficient to pay the plaintiffs' claim and costs.

The appellants offered a prayer to the effect that the deed was fraudulent upon its face.

The garnishees offered a prayer, that "there was no evidence that the defendants intended to defraud their creditors, within the meaning of the Act of 1864, ch. 306, in making the deed ; and that therefore the finding of the

Court must be for the garnishees." This last prayer was granted, and verdict and judgment were rendered in favor of the garnishees.

The deed recites that the grantors are unable to pay their creditors in full, gives what purports to be a list of all their creditors, and conveys to the trustees all their property and estate of every kind belonging to them individually and to the firm: in trust for the benefit of their creditors, *who shall, within a period of sixty days from the date of the deed, accept the benefit of the instrument, and release the grantors from their claims and demands.*

The deed makes no disposition of the surplus that may remain in the hands of the trustees, after paying the creditors who may execute releases within the time prescribed; such surplus is not appropriated to the creditors; but results by implication to the grantors. That such a deed is fraudulent against creditors under the 13th of Elizabeth is no longer an open question in this Court.

In *Sangston vs. Gaither*, 3 *Md.*, 48, 52, where the deed provided in express terms, that the balance after paying the releasing creditors, should be paid to the grantors, the instrument was held to be fraudulent in law and void.

In *Malcolm vs. Hodges*, 8 *Md.*, 418, 426, 427, it was decided "that an *implied* reservation of the surplus to the grantor, after paying the releasing or preferred creditors, avoids the deed equally with an *express* reservation, and the Court cannot look outside of the deed to ascertain whether there will be a surplus or not." This ruling was affirmed in *Bridges vs. Hindes*, 16 *Md.*, 101, 104.

It is contended on the part of the appellees that deeds of trust, like the one under consideration, are made valid by the provisions of the Code, Art. 48, sec. 13, which provides that "No deed or conveyance to a trustee for the benefit of creditors generally, shall be deemed fraudulent, or a fraudulent or undue preference, because of a condition requiring the creditors to release the debtor, and depriving

any creditor who refuses to release, of all benefit from property so conveyed in trust, but all such deeds of trust are hereby declared to be valid, and shall not be set aside either at the suit of a trustee under this Article, or at the suit of any creditor.''

This section is identical with the 13th section of the Act of 1854, ch. 193, which was in force at the time when the deed was executed, that came before the Court in *Bridges vs. Hindes*, 16 *Md.*, 101, and yet the Court held the deed to be fraudulent and void upon the authority of *Sangston vs. Gaither*, 3 *Md.*, and *Malcolm vs. Hodges*, 8 *Md.* The Act of 1854, though not mentioned in the report, either in the arguments of counsel or in the Court's opinion, was not overlooked. But was construed merely as embodying in the written law what had been decided by the Court of Appeals in *Green and Trammell vs. Trieber*, 3 *Md.*, 11, namely, that deeds of trust made *bona fide* for the benefit of all the creditors generally, if otherwise free from objection, should not be declared invalid by reason of their containing a provision requiring releases from creditors to entitle them to preference. Upon the effect of such clauses in deeds of trust, there had been much conflict in the decisions, as will be seen by reference to *Albert vs. Winn and Ross*, 7 *Gill*, 447; *Kettlewell vs. Stewart*, 8 *Gill*, 472; *Green and Trammell vs. Trieber*, 3 *Md.*, 11; *Sangston vs. Gaither*, 3 *Md.*, 40.

The Act of 1854, ch. 193, sec. 13, and the Code, Art. 48, sec. 13, which are in the same words, do no more than give the legislative sanction to such a deed as had been declared void in 7 *Gill*, 447, and decided to be valid in 8 *Gill*, 472, which contained a clause providing for a *release*, as a condition precedent, to entitle the creditors to the benefit of the preference thereby secured. *Article* 9 of the Code constitutes the insolvent system, its several parts must be construed · together. The *seventh* section declares that any conveyance made by an insolvent, for the purpose of giving

an undue preference, shall be void.    This is qualified, and its meaning defined by the 13*th section,* which allows an insolvent to prefer such creditors as may release, and declares that such is not an undue preference, within the meaning of the seventh section.    The 13th section refers in terms, to deeds of trust *"for the benefit of creditors generally,"* that is to such deeds as indicate the debtor's property to *all his creditors,* and cannot be construed to sanction a deed like the one now before us; which is not for the benefit of creditors generally, but only for the benefit of such creditors as may release, and which secures the surplus (after they are paid) to the use of the grantors.    It is immaterial whether this be accomplished by express words, or results from the legal operation of the deed.    That this deed is, on its face, fraudulent and void against creditors under the Statute of Elizabeth, is, as we have before said, no longer an open question in Maryland.

Is it fraudulent, within the meaning of the Act of 1864, ch. 306, so as to entitle the appellants to proceed by attachment under that Act?

The argument on the part of the appellees is that "the Act contemplates an actual clandestine fraud, and not a constructive technical fraud."    That is, as we understand the proposition, in order to entitle the creditor to the remedy by attachment, under the Act of 1864, it is not sufficient for him to prove that the debtor has assigned his property by a deed which is condemned by the statute as on its face fraudulent and void against creditors; but he must show by proof *aliunde* that there existed in the mind of the grantors a fraudulent or dishonest purpose, and that the deed was *in fact* executed with that design.

We find nothing in the words of the Act to justify this construction.    They are very similar to those employed in 13th Elizabeth, which declare to be void, deeds, &c., made *with intent* to hinder, delay, or defraud creditors; and have always been construed to render void all deeds, &c., which

by their terms have that operation and effect, without reference to what may have been the real purpose in the mind of the grantors, or any inquiry outside of the deeds to ascertain the real intent of the parties. Where a conveyance, by its terms, operates to hinder, delay or defraud creditors, the intent to do so is imputed to the parties. We see no good reason why a similar rule of construction should not apply to the Act of 1864, ch. 306, which gives to creditors the remedy by attachment against a debtor who has assigned or disposed of his property "with the intention of defrauding his creditors." In this case, as we have seen, the deed of trust is condemned by the law as fraudulent upon its face; it therefore comes within the prohibition of the Act of 1864. The fraudulent character of the instrument is a presumption of law, not depending upon extrinsic evidence. *Inloes vs. Am. Ex. Bank,* 11 *Md.,* 173.

The counsel for the appellees, who certainly argued this case with great ability, has, as it seems to us, confounded *intent* with *motive.* In dealing with this subject, the law does not regard the motive of a party, unless it be evidenced by some illegal act. Thus in *Horwitz vs. Ellinger,* 31 *Md.,* 492, 504, where the debtor had made a general assignment for the benefit of all creditors, and it was sought to maintain an attachment under the Act of 1864, by evidence that the grantor had made the deed with a dishonest motive, this Court said: " We are dealing with the *act* of the parties, and if that be such as the law authorizes and approves, the secret motives that prompted it are wholly immaterial." So, on the other hand, the correlative proposition is equally true. If the act is one which the law condemns; if the deed, by its legal operation and effect, hinders, delays and defrauds creditors, the intent to do so is imputed to the parties. As was said in *Gardner vs. Lewis,* 7 *Gill,* 379: " When any transaction necessarily produces the effect which a statute declares fraudulent as against creditors, the Court may pronounce such act fraudulent. Whatever is

the necessary consequence of an act deliberately done, that the law presumes every man to intend.''

In holding that the deed of trust, in this case, is fraudulent under the Statute of Elizabeth, and within the meaning of the Act of 1864 ; we are not to be understood as imputing turpitude to the grantors.   The statutes, as we have said, do not deal with the secret motives of parties ; but regard only the practical operation and effect of the instrument.

Being of opinion that there was error in refusing the prayer of the appellants, and in granting that of the appellees, the judgment will be reversed, and the cause will be remanded, to the end that judgment may be entered in favor of the appellants.

*Judgment reversed, and<br>cause remanded.*

(Decided 23rd June, 1874.)

Robinson, J., dissented.