GENERAL TIRE & RUBBER COMPANY *v.* GENERAL TIRE COMPANY.

[No. 56, October Term, 1938.]

*Decided December 1st, 1938.*

The cause was argued before URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Richard F. Cleveland,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellant.

*Joseph T. Brennan,* with whom were *Hilary R. Gans* and *Brown & Brune* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from the action of the Superior Court of Baltimore City in granting a motion to quash an attachment levied at the instance of appellant against The General Tire Company, a body corporate. The sole question presented relates to the correctness of the trial court's action in quashing the writ. The record contains. no findings of fact as such, and no rulings on issues of law as such; hence the lower court's action is reviewable upon the entire record. *Howard v. Oppenheimer,* 25 Md. 350, 366; *Lang v. Shanawolf,* 137 Md. 17, 18, 111 A. 117; 2 *Poe's Pl. & Pr.* sec. 582A.

The relevant facts are open to little, if any, dispute, and in our judgment the decision must ultimately turn upon their sufficiency to make section 36, article 9 of the Code applicable. That section relating to attachments on original process for fraud provides for their issuance, because

(first) "the debtor is about to abscond from this State, or (second) that the defendant has assigned, disposed of or concealed * * * his property or some portion thereof, with intent to defraud his creditors, or (third) that the defendant fraudulently contracted the debt or incurred the obligation respecting which the action is brought, or (fourth) that the defendant has removed or is about to remove his property, or some portion thereof, out of the State with intent to defraud his creditors."

It was under the third ground specified in the last quoted section of the statute that the attachment in this case was obtained, appellee's indebtedness being upon an open account and trade acceptances in the amount of $11,184.56.

The appellee is a Maryland corporation engaged in the sale of tires and accessories, while appellant is an Ohio corporation engaged in manufacturing tires and accessories with main offices in Akron. Appellee in 1934 had one hundred shares of common stock outstanding, and prior to April, 1937, fifty of those shares were owned by appellant, while the remaining fifty were owned by Charles E. Criss, president of appellee. In April, 1937, appellant, in pursuance of a standing offer made three years earlier from Criss, sold the latter the fifty shares of the stock which it owned, and Criss thus became the sole owner of the entire one hundred shares of stock issued and outstanding. It was then agreed between the parties hereto that monthly trade statements and balance sheets would be furnished appellant by appellee as a basis for advancement of credit, and such statements were furnished, beginning in April, 1937, and ending with December, 1937.

At the time Criss acquired the fifty shares of stock owned by appellant, he caused appellee to borrow funds, amounting to $6,000, from the First National Bank of Baltimore, for its purchase, and while, by November, 1937, the loan had been reduced to $5500, it nowhere appeared in any of the monthly statements. Appellant's New York manager, to whom the statements were fur-

nished, had no knowledge that appellee had borrowed the money, and was of the belief that Criss had in some manner obtained it upon his individual responsibility. The failure to list the bank loan as an unpaid obligation of appellee in its statements and balance sheets to appellant meant that the furnished statements and balance sheets were at all times incorrect, in that they showed appellee's financial condition from $6,000 to $5,500 stronger than it actually was, and such undisclosed indebtedness to the bank was at all times greater than appellee's stated total indebtedness to all its creditors other than appellant. Furthermore, the conclusion is inescapable that Clark, appellant's credit manager, relied on such false statements in extending credit to appellee, and did not learn of the latter's indebtedness to the First National Bank of Baltimore until March, 1938, when an assistant, Mr. Lutz, made a visit to Baltimore and discovered it. In addition, both logic and reason dictate that Clark should have relied upon the statements, for otherwise what could have been his motive in requiring them? And by the same token, appellee, who received credit upon the faith of such statements, must have intended them to be accepted as statements which truly revealed its financial condition. Do these facts entitle appellant to the protection of the statute, or must he prove an actual, fraudulent, and dishonest purpose on the part of appellee? The statute (section, 36, article 9), first passed in 1864, was based on the Act of 13th Elizabeth. It will be observed that the four grounds entitling the creditor to an attachment are included in the same section, listed in one sentence, and are as closely connected as the English language could place them. This excludes any idea of a legislative intent to treat one ground differently from the other with respect to the character or degree of proof required to entitle a creditor to the benefit of the statute, or an acceleration of his remedy to collect his indebtedness. See, also, *Hodge & McLane, Law of Attachment in Maryland*, ch. 17, and 2 *Poe, Pl. & Pr.*, ch. 6, for further discussion of the section, in which no distinction, because of motive,

is made between an intent to defraud and contracting a debt fraudulently.

In the case of *Whedbee v. Stewart,* 40 Md. 414, our predecessors were reviewing the action of the lower court in quashing an attachment obtained upon the second ground mentioned in the statute. There, as here, the contention was made that the attaching creditor must prove actual fraudulent intent on the part of the debtor, but this view was not accepted, and in the course of that opinion Chief Judge Bartol, speaking for the court, said:

"The argument on the part of the appellees is that 'the Act contemplates an actual clandestine fraud, and not a constructive technical fraud.' That is, as we understand the proposition, in order to entitle the creditor to the remedy by attachment, under the Act of 1864, it is not sufficient for him to prove that the debtor has assigned his property by a deed which is condemned by the statute as on its face fraudulent and void against creditors; but he must show by proof *aliunde* that there existed in the mind of the grantors a fraudulent or dishonest purpose, and that the deed was *in fact* executed with that design.

"We find nothing in the words of the Act to justify this construction. They are very similar to those employed in 13th Elizabeth, which declare to be void, deeds, etc., made *with intent* to hinder, delay, or defraud creditors; and have always been construed to render void all deeds, etc., which by their terms have that operation and effect, without reference to what may have been the real purpose in the mind of the grantors, or any inquiry outside of the deeds to ascertain the real intent of the parties. Where a conveyance, by its terms, operates to hinder, delay or defraud creditors, the intent to do so is imputed to the parties. We see no good reason why a similar rule of construction should not apply to the Acts of 1864, ch. 306, which gives to creditors the remedy by attachment against a debtor who has assigned or disposed of his property 'with the intention of defrauding his creditors'. In this case, as we have seen, the deed of trust is condemned by the law as fraudulent upon its face; it there-

fore comes within the prohibition of the Act of 1864. The fraudulent character of the instrument is a presumption of law, not depending upon extrinsic evidence. *Inloes v. American Exch. Bank.*, 11 Md. 173.

"The counsel for the appellees, who certainly argued this case with great ability, has, as it seems to us, confounded *intent* with *motive*. In dealing with this subject, the law does not regard the motive of a party, unless it be evidenced by some illegal act. Thus in *Horwitz v. Ellinger*, 31 Md. 492, 504, where the debtor had made a general assignment for the benefit of all creditors, and it was sought to maintain an attachment under the Act of 1864, by evidence that the grantor had made the deed with a dishonest motive, this court said: 'We are dealing with the act of the parties, and if that be such as the law authorizes and approves, the secret motives that prompted it are wholly immaterial.' So, on the other hand, the correlative proposition is equally true. If the act is one which the law condemns; if the deed, by its legal operation and effect, hinders, delays and defrauds creditors, the intent to do so is imputed to the parties. As was said in *Gardner v. Lewis*, 7 Gill 379: 'When any transaction necessarily produces the effect which a statute declares fraudulent as against creditors, the court may pronounce such act fraudulent. Whatever is the necessary consequence of an act deliberately done, that the law presumes every man to intend.'

"In holding that the deed of trust, in this case, is fraudulent under the Statute of Elizabeth, and within the meaning of the Act of 1864; we are not to be understood as imputing turpitude to the grantors. The statutes, as we have said, do not deal with the secret motives of parties; but regard only the practical operation and effect of the instrument."

Is a higher degree or character of proof required to enable appellant to maintain an attachment on the ground that the debt was fraudulently contracted than upon the ground considered by the court in the last cited case, to-wit, that the defendant "assigned, disposed of or con-

cealed * * * his property * * * with intent to defraud his creditors"? We think not. The legislative intent as disclosed by the statute seems to have been to place the four grounds on a common plane in this respect. No doubt exists that the failure of appellee to include its indebtedness to the First National Bank of Baltimore in obtaining credit of appellant was a misrepresentation of a highly material fact. *Dumay v. Sanchez,* 71 Md. 508, 18 A. 890; 6 *C. J.* page 72 (note); *Western Grocer Co. v. Alleman,* 81 Kan. 543, 106 P. 460.

The case last cited arose under a statute giving the creditor the remedy of attachment where a debt had been fraudulently contracted, and in the course of that opinion it was said: "It is therefore beyond dispute that Alleman did make financial statements to the grocer company. It is equally clear that these statements omitted the very important item of an indebtedness to his wife substantially equal to his original investment in the business. It would be unreasonable to doubt that the statements were relied upon, and that the goods were sold by reason of them. They had no other purpose than as a basis of credit, and the defendant must have so understood. The debt sued upon was therefore fraudulently contracted within the meaning of the attachment statute."

The furnishing of the false statements to appellant represented deliberate acts of appellee, a necessary consequence of which was to deceive and mislead appellant, who relied thereon in extending credit. Since, therefore, this conduct produced the effect declared by the statute as fraudulent against creditors, the law will presume that appellee intended it to be fraudulent. *Whedbee v. Stewart, supra.* The beneficent effects of the statute are not lost to a creditor in such cases because of his inability to prove that the debtor was actuated by a fraudulent or dishonest purpose in making and transmitting to appellant the false trade statements and balance sheets. A contrary holding would be tantamount to abrogating the statute, for, as observed in *Whedbee v. Stewart, supra,* the statute deals not with the secret motive of the debtor,

but looks only to the practical operation and effect of his conduct.

This court is, therefore, unable to adopt the view that the attachment should have been quashed because of appellant's failure to show that when it made the false statements and balance sheets and sent them to appellant, appellee was actuated by some fraudulent or dishonest purpose.

Analogies are available from the interpretation of other statutes designed to protect creditors, notably the Fraudulent Conveyances Act, Code, art. 39B, and the Federal Bankruptcy Act, 11 U. S. Code Ann. sec. 1 *et seq.*, under both of which it has been held that facts and their results as distinguished from motive are the tests for determining the existence of fraud. *Farrow v. Hayes,* 51 Md. 498; *Manly v. Ohio Shoe Co.,* (C. C. A.) 25 F. 2d 384; See, also, *In re New York Commercial Co.,* (C. C. A.) 228 F. 120; *Remington on Bankruptcy* (4th Ed.), sec. 2456; *Lineweaver v. Slagle,* 64 Md. 465, 2 A. 693.

The views heretofore expressed respecting proof that a debt was fraudulently contracted within the meaning of section 36, article 9 of the Code are not inharmonious with the authorities last above cited.

An examination of the authorities relied upon by appellee discloses no conflict with the views herein expressed. They deal with cases resting on deceit or with facts not analogous to those here presented.

In view of what has been said, the order appealed from must be reversed.

> *Order reversed and cause remanded, with*
> *costs to appellant.*