(Decided 27th January, 1886.)

PETER L. LINEWEAVER, Surviving Partner, &c. *vs.* DAVID W. SLAGLE.

*Limited partnership—Renewal—Special partner—What constitutes a Payment of the Special partner's Capital—How the Payment may be made—Certified Check—Art. 72, sec. 17, of the Code—General partner—Illegal preference—Question of intent—Presumption of Law—Evidence.*

H., M. and S. formed a partnership under the firm name of H., M. & Co., to carry on a general commission business in the City of Baltimore, in which S. became a special partner and contributed $5000 capital. This partnership by its terms ended on the 14th of March, 1882. On the 15th of March, 1882, the same parties executed and acknowledged the following certificate: "Be it remembered, and it is hereby certified, that we, H. and M. as general partners, and S. as special partner, and all residing in the City of Baltimore, in the State of Maryland, have formed and entered into a limited partnership under the name or firm of H., M. & Co., and intend to

Lineweaver *vs.* Slagle.

transact a general commission business in the City of Baltimore. The said S. has contributed $10,000 to the capital of the firm, and the partnership is to commence on the 15th day of March, 1882, and is to terminate on the 28th day of February, 1885." HELD:

That the change in the amount of the capital to be contributed by the special partner, from $5000 to $10,000, made this in legal contemplation a new partnership, and not a renewal or continuance of the old one. And the right of S. to hold the position of a special partner in this partnership was in no wise aided or affected by the fact that he was such in the old one.

On the 15th of March, 1882, the day on which the certificate was signed, S. gave to the firm of H., M. & Co. a certified check for $10,000, which was on the same day deposited in bank, and passed to the credit of the firm. Afterwards on the same day, the firm gave S. its check on the same bank for $6500; and three days afterward, the firm by another check paid him the sum of $1119.16. These two checks aggregating the sum of $7619.16, were for the cash appearing to the credit of S. on the books of the old firm for his original capital of $5000, and the profits thereon; but the cash thereby appearing to be on hand was theoretical merely, and the actual cash was scattered over the country in the shape of debts and accounts due the firm, and was not collected until some time after the new firm had been in operation. On a subsequent failure of the firm, it was HELD:

1st. That the sum of $10,000 was not contributed by S. in cash. The sum of $2380.84 only was so contributed, while the balance, amounting to $7619.16, was in fact represented by his interest in the uncollected and unrealized assets of the old firm, taken at a valuation which was guaranteed by that firm.

2nd. That this could not be accepted as an equivalent for the cash which the law requires.

3rd. That the statement in the certificate and affidavit that S. had made this contribution of $10,000 was in legal contemplation a "false statement," no matter in what good faith or with what honest intentions he and his associates may have acted.

4th. That the failure of S. to contribute the whole $10,000 in cash, made him liable to the creditors of the new firm of H., M. & Co., as a general partner.

5th. That payment by a certified check on a bank in good standing, which the bank actually pays, is a good mode of payment under

the law of limited partnership, and the mere fact that a special partner has paid his contribution by such a check does not make him a general partner.

On the 24th of April, 1884, only five days before the firm failed, H. and M. conveyed a house and lot which belonged to the firm, and stood in their names, to the firm of C. W. S. & Co., of which S. was a member, for the consideration of $2485.62, of which $1985.62 consisted of loans with interest thereon, previously made by S. & Co., to the grantors. HELD:

1st. That if at the time this deed was made, H. and M. knew their firm was insolvent, or could, by the exercise of reasonable diligence, have discovered its condition, and if S. also knew the true condition of said firm, or could have discovered it by the exercise of reasonable diligence, without interfering with the conduct of the firm's business, then the deed was made with the intent to prefer the grantees therein, and having been made to S. himself and others, it must be presumed to have been made with his concurrence, and he therefore by virtue of the seventeenth section, of Article seventy-two, of the Code, became liable as a general partner.

2nd. That upon the facts stated the law would presume the intent to prefer, and such intent need not be proved as an independent fact.

Where the law imputes an intent from the acts done by a party, his testimony as to what his intention was in doing the acts cannot be received in evidence.

APPEAL from the Court of Common Pleas.

By agreement of counsel in the Court below, a jury trial was waived, and the case was tried before the Court. The case is stated in the opinion of this Court.

*Exception.*—So much of the exception as relates to the admissibility of evidence is sufficiently stated in the opinion of the Court. The plaintiff offered the four following prayers, in addition to others which were conceded or granted, and are therefore omitted:

2. The Court find as matter of law, that if it finds that David W. Slagle, one of the defendants, for the purpose of contributing his capital to the firm of Hopkins, Matthews & Co., formed on the 15th day of March, 1882, paid

to said firm the check of Charles W. Slagle & Co. for $10,000, offered in evidence, and that the said firm of Hopkins, Matthews & Co., out of the funds received for said check, repaid to the said David W. Slagle on the 15th of March, 1882, the sum of $6500, and on the 18th day of March, 1882, the sum of $1119.16, making in all the sum of $7619.16, and shall further find that the said sum of $7619.16, was paid to said D. W. Slagle as the amount standing to his credit on the books of a former firm of Hopkins, Matthews & Co., and that the new firm of Hopkins, Matthews & Co., formed on the 15th of March, 1882, continued the business of the old firm, and undertook the liquidation of its affairs, and that the new firm kept a separate account of the liquidation of the affairs of the old firm, and that such liquidation failed to be realized for account of the said David W. Slagle, the said amount of $7619.16, so repaid to him as above mentioned, and fell short, then there never was a legal contribution by David W. Slagle of his special capital of $10,000 to the firm formed March 15th, 1882, and the verdict must be against all of the defendants for the amount set forth in the plaintiff's first prayer.

5. The Court finds as a matter of law, that if it finds that the $10,000 of special capital, which was to have been contributed by David W. Slagle to said firm of Hopkins, Matthews & Co., was not paid in by him in money, but to make said contribution he passed to said firm the check of Charles W. Slagle & Co., for $10,000, in evidence in this case, drawn upon the Citizens' National Bank, and that said check was, on the day on which it was received, deposited by said firm of Hopkins, Matthews & Co., in their account in said bank, and that on the same day the said firm drew for the benefit of David W. Slagle, and delivered to him, their check for $6500, offered in evidence, against their said bank account, and that said check for $6500, was paid by said bank, and charged by it.

against the said account of Hopkins, Matthews & Co., and that at the time the said check for $6500 was paid by said bank, there were not funds enough to the credit of Hopkins, Matthews & Co., in said bank, to pay said $6500 check, except in whole or in large part out of the credit produced by the deposit of said $10,000 check, then the verdict should be for the plaintiff against all the defendants for the amount set forth in the plaintiff's first prayer.

8. The Court finds, as matter of law, that if it shall find that on the 26th day of April, 1884, the said firm of Hopkins, Matthews & Co., formed on the 15th day of March, 1882, and the said Luther W. Hopkins and Charles T. Matthews were insolvent, or were unable to pay all their debts as they should fall due in the regular course of business, and knew their true condition, or could, by the exercise of reasonable diligence, have discovered it; and that on the said day the said firm of Hopkins, Matthews & Co. paid the defendant, David W. Slagle, the sum of $1030 in payment of a pre-existing indebtedness then overdue, of the said firm of Hopkins, Matthews & Co. to said David W. Slagle, then the said payment was made with the concurrence of said David W. Slagle, and with the intent to give a preference to him, and the verdict should be for the plaintiff against all the defendants for the amount set forth in the plaintiff's first prayer.

9. The Court finds, as matter of law, that if it shall find that on the 26th day of April, 1884, the firm of Hopkins, Matthews & Co., formed on March 15th, 1882, paid the defendant, David W. Slagle, the sum of $1030 for a then overdue indebtedness, then the verdict should be for the plaintiff against all the defendants for the amount set forth in the plaintiff's first prayer; provided they further find that the said firm of Hopkins, Matthews & Co., at the time of such payment, was not possessed of capital apart from the sum contributed by the special partner, to make said payment of April 26th, 1884.

And the defendants prayed the Court to rule as matter of law, as follows:

3. That if the Court shall find that the first firm of Hopkins, Matthews & Co., sold all their assets in good faith to the second firm of Hopkins, Matthews & Co., (and the members of which said second firm are the defendants in this case,) upon terms that the said second firm should assume and pay all the debts and liabilities of the first firm; and that the first firm did guarantee the goodness of its assets, and their sufficiency to pay all said debts and liabilities as they stood credited on the books of said first firm, including the capital and profits as they stood credited on the books of the first firm to David W. Slagle; and that said agreement was fully carried out in good faith upon both sides; provided that that was not done with the understanding or intent prior to or at the formation of the second partnership, to make his contribution to the new firm partly cash and partly assets of the old firm; that then the payment to said David W. Slagle by the said second firm of the sums so standing to his credit on the books of the first firm in due course of liquidation, of the accounts between the said two firms, did not constitute said David W. Slagle a general partner of said second firm of Hopkins, Matthews & Co.

4. That if the Court shall find that before signing an acknowledgment of the certificate of partnership, and the making of the affidavit thereto, dated 15th March, 1882, given in evidence by the plaintiff, the capital stock contributed by the special partner, David W. Slagle, had been paid by a check upon the Citizens' National Bank, dated on the day of the signing and acknowledgment of said certificate of partnership, and the making of the affidavit thereto, which check had been already duly certified by said bank upon that day and before the signing and acknowledgment of said certificate of partnership, and the making of the affidavit thereto, and upon that same day

Lineweaver *vs.* Slagle.

the said check was deposited in said bank to the credit of said partnership, and by the said bank credited to said partnership on that day, and that said bank was then in good standing, and actually paid said check by crediting it to said partnership on that day, *then* the payment of such amount of capital, as said special partner was to contribute to the common stock so made, was a sufficient compliance with the law of limited partnership as to the payment of such amount of capital, and does not constitute said David W. Slagle a general partner of said partnership.

5. That if the Court shall find the facts stated in the first, second and third prayers, and shall further find that the first partnership of Hopkins, Matthews & Co. sold and transferred and delivered all its assets of every kind in good faith to the second partnership, upon the terms and with the understanding fairly and honestly entered into and afterwards carried out, that the second firm should assume and pay all the debts and liabilities of the first partnership, including the sum standing to the credit of David W. Slagle on the books of said first firm, for capital and profits, as mentioned in the second prayer, and that said first partnership did guarantee the goodness of its assets and their sufficiency to pay all said debts and liabilities as they stood credited on the books of said first partnership, including the amount to the credit of said David W. Slagle as aforesaid; that then such an agreement was lawful; and if it shall further find that there was not at any time any other agreement, understanding or intention of any kind, and that said agreement was fully carried out in good faith upon both sides, that then the payment to said David W. Slagle by the said second partnership, of the sum so standing to his credit in course of the liquidation of the accounts between the two firms, in the manner given in evidence, did not constitute said David W. Slagle a general partner of said second firm of Hopkins, Matthews & Co.

6. That if the Court shall find from the evidence that there were two partnerships of Hopkins, Matthews & Co., as given in evidence, and find the facts mentioned in the fifth prayer; and further find that said David W. Slagle did, on the 16th day of November, 1881, lend to said first partnership the sum of $1000 upon a mortgage note secured by mortgage duly executed upon a market stall worth considerably in excess of that sum, and that said mortgage debt was afterwards paid by the second partnership, in due course, in pursuance of said understanding and agreement mentioned in said fifth prayer, if the Court shall find the same, that then said transactions and the loaning and repayment of said $1000 and of $30 interest thereon, and the execution and release of said mortgage do not constitute said David W. Slagle a general partner of said partnership of Hopkins, Matthews & Co.

7. That notwithstanding the Court may find that in or about the month of April, 1884, the said partnership of Hopkins, Matthews & Co., executed to the said firm of C. W. Slagle & Co., the deed offered in evidence for the consideration of $2485.62, being in part for a debt already due, and that David W. Slagle knew of the making of said deed and assented thereto; nevertheless, if the Court shall also find, that at the time of the execution of said deed, all the members of the said partnership of Hopkins, Matthews & Co., verily believed themselves solvent and had no reason whatsoever to deem themselves insolvent, and that they executed said deed in good faith, and that in executing the same they had no intent to give any undue preference to the said firm of C. W. Slagle & Co., but executed the same in good faith and in due course of business, then the said transaction and the making of said deed does not constitute the said David W. Slagle a general partner of said firm of Hopkins, Matthews & Co.

8. That notwithstanding the Court may find that in or about the month of April, 1884, the said firm of Hopkins,

Matthews & Co., paid to the firm of C. W. Slagle & Co., the sum of $150, being part of a debt of $300, which the said C. W. Slagle & Co., had lent to said Hopkins, Matthews & Co., shortly before, and that David W. Slagle knew of said payment of $150, and assented thereto; nevertheless, if the Court shall also find, that at the time of the making of said payment all the members of the said partnership of Hopkins, Matthews & Co., verily believed themselves solvent, and had no reason whatever to deem themselves insolvent, and that they made said payment in good faith, and that in making it they had no intent to give any undue preference to the said firm of C. W. Slagle & Co., but executed the same in good faith and in due course of business, then the said transaction and the making of said payment does not constitute the said David W. Slagle a general partner of said firm of Hopkins, Matthews & Co.

The Court, (DUFFY, J.,) rejected the second, fifth, eighth, and ninth prayers of the plaintiff, and granted the third, fourth, sixth, seventh, and eighth prayers of the defendants, the third prayer being granted in lieu of the fifth and rejected the said fifth prayer. The plaintiff excepted, and the verdict and judgment being against him as to the defendant David W. Slagle, he appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*George Whitelock,* and *Samuel D. Schmucker,* for the appellant.

The appellee never in fact paid in his capital to the defendant firm of Hopkins, Matthews & Co., actually and in good faith, within the meaning of the limited partnership law, and must be held liable as a general partner for the note here sued on. The law requires the payment to be *bona fide* as well as actual, and, as settled by many

decisions, contemplates and exacts that it shall be made not only in cash, but in such manner that his property is thereafter left to the risks of the business, with an accompanying intent on the part of the owner absolutely so to pay and so to leave the cash during the entire life of the partnership. The good faith required by the statute only exists where there are no intents and no purposes on the part of the special partner of making the apparent payment and apparent devotion of the special capital to the business any otherwise than real, actual or absolute. The contribution must be untainted with any arrangement, contrivance or understanding that any disposition of the sum paid in is thereafter to be·made which, in effect, returns it to the special partner, or gives him the benefit of it, or in any manner practically withdraws it from the use of the copartnership to which it has been contributed. Numerous devices and arrangements, some of which were quite similar to the one at bar, affecting the contribution by special partners of their capital to limited partnerships, have been held by the Courts to be obnoxious to the provisions of the law and subversive of its scheme and purpose. *Revised Code, Art.* 33, *secs.* 2, 5 *and* 6; *Haviland vs. Chace,* 39 *Barb.,* 283; *In re Merrill, et al. Bankrupts,* 12 *Blatchford,* 221; *Richardson vs. Hogg,* 38 *Pa.,* 153; *Haggerty, et al. vs. Foster,* 103 *Mass.,* 17; *Pierce vs. Bryant,* 5 *Allen,* 91; *Buckley vs. Bramhall,* 24 *How. Pr.,* 455; *Van Ingen vs. Whitman,* 62 *N. Y.,* 513; *Andrews vs. Schott,* 10 *Pa.,* 47; *Maginn vs. Lawrence,* 45 *N. Y. Sup. Ct.,* 135; *In re Thayer & Bro.,* 7 *Am. Law Rev.,* 177; *Metropolitan Bank vs. Surritt,* 15 *Weekly Digest,* 289; *Durant vs. Abendroth,* 69 *N. Y.,* 148; *Troubat's Limited Partnership, sec.* 108; *Lawrence vs. Merrifield,* 10 *Jones & Spencer,* 36, 41, (affirmed in 73 *N. Y.,* 590.)

The appellant, in addition to his sixth prayer, which merely charged the statutory language as to the actuality and *bona fides* of the payment by the special partner,

without defining what was such payment, was entitled to have granted his second and fifth prayers, which were rejected, and which announced the law governing the payment by the special partner of his capital, as applied to the indisputable facts of this case as they appeared in evidence. *Whiteford vs. Burckmyer and Adams*, 1 *Gill*, 127, 143–4; *Day, et al. vs. Day*, 4 *Md.*, 262, 269.

The third prayer of the defendants, which was granted, is bad in that it proceeds upon the theory that the mere guaranty (without the actual payment of the shortage) from the old firm to the new, the substitution of the promise to make good the assets for the actual cash, which the law requires, was sufficient, and also in that it makes it necessary, in order to hold the alleged special partner, to find that there was a motive in the minds of the partners to make the contribution partly cash and partly in assets of the old firm, instead of holding the defendants to have intended the legitimate consequences of their own acts, which they must conclusively be held to have intended. *Ecker vs. McAllister*, 45 *Md.*, 290, 305, 309–10; *Schuman vs. Peddicord*, 50 *Md.*, 560.

The fourth prayer of the appellee merely asserts the abstract proposition that the payment by a certified check, which was the same day reduced to cash, would be a payment of cash, as contemplated by the law. This, as an abstract proposition, is not denied by the appellant, but it does not cover the facts of the case and ignores entirely the undenied, essential element in the evidence of the immediate return to Slagle of three-quarters of the money so paid, and makes no reference whatever to the good or bad faith with which the contribution was made. *Schillinger vs. Kratt*, 25 *Md.*, 49, 54; *B. & O. R. R. Co. vs. Green*, 25 *Md.*, 72, 87, 88, 90, 91.

But even if the appellee was, in the first instance, a special partner of the firm, he afterwards became liable for all its debts as a general partner, by reason of the pref-

'erences which he received at a time when the firm is conceded to have been insolvent. His assent to these preferences is proven by the fact that they were all directly to him or a firm of which he was a member.

The payment to him, three days before the failure, of the $1000 chattel-mortgage note, when five months overdue, made him a general partner—*first*, because it was the preference of a creditor with the special partner's assent when the firm was insolvent; and *secondly*, because it was the withdrawal of a portion of his special capital, it being conceded that all the general capital was then consumed. The law (Revised Code, Art. 33, sections 13 and 14) provides that no portion of the special capital shall be withdrawn by the limited partner in the shape of dividends, profits or *otherwise*, but in the case only of *interest* or *profits* does it provide for an escape from liability for a transgression of this provision by restoring the withdrawal.

The appellant's eighth and ninth prayers, which were rejected, correctly stated the law upon this part of the case, and the appellee's sixth prayer was improperly granted. *Revised Code, Article* 33, *sections* 15, 16, 17 *and* 18; *Troubat on Limited Partnership, section* 393; *Hayes vs. Heyer,* 3 *Sandford,* 293, 294; *Fanshawe vs. Lane,* 16 *Abbott's Practice,* 71; *Innes vs. Lansing,* 7 *Paige Chy.,* 583; *White vs. Hackett,* 20 *N. Y.,* 178; *Revised Code, Article* 33, *sections* 10, 13 *and* 14; *Madison County Bank vs. Gould,* 5 *Hill,* 309; *Bell vs. Merrifield,* 28 *Hun,* 219; *Ames vs. Downing,* 1 *Bradford,* 321, 325-6-7.

And for analogy to withdrawal see instance of removal of firm from one county to another—*Van Riper vs. Poppenhausen,* 43 *N. Y.,* 68.

The deed made to the special partner's general firm five days before the failure, and the payment to it upon the very day of the assignment for the benefit of creditors, made him a general partner, because they were prefer-

ences of creditors, with the special partner's assent, when the limited partnership was insolvent.

On these points the Court correctly ruled in granting the appellant's seventh and tenth prayers, but the effect of them was entirely overcome by the erroneous granting of the appellee's seventh and eighth prayers, whereby the intent with which the preferences were given was improperly left to be discovered in the mental motive or purpose of the parties giving the preference, instead of being ascertained and defined by their acts, the necessary consequence of which they must be held as matter of law to have intended. And the effect of the appellant's prayers was, moreover, altogether destroyed by the Court below improperly permitting all of the defendants, including the alleged special partner, to testify in the testimony excepted to, that none of them intended to give a preference in the making of this deed or the payment, on the day of the failure, of the $150. This testimony was plainly inadmissible. *Rev. Code, Article* 33, *sections* 15, 16, 17, *and* 18, and cases cited above under the discussion of the chattel mortgage. See also, *Mills vs. Argall,* 6 *Paige,* 577, 582; *Whedbee, &c. vs. Stewart and Price,* 40 *Md.,* 414; *Gardner vs. Lewis,* 7 *Gill,* 377; *Horwitz, Garnishee vs. Ellinger,* 31 *Md.,* 492; *Ecker vs. McAllister,* 45 *Md.,* 290, (*pp.* 305 *and* 309–10); *Schuman vs. Peddicord,* 50 *Md.,* 560; *Toof vs. Martin,* 13 *Wallace,* 40; *In re Bininger,* 7 *Blatchford,* 262, 268, 276–7; *Wager vs. Hall,* 16 *Wallace,* 584, 599; *In re Black & Secor,* 2 *Benedict,* 196, 205.

*Frederick W. Story,* and *Edward Otis Hinkley,* for the appellee.

The withdrawal of any part of his capital, by the special partner, only renders him responsible for its repayment. *Hampden Bank vs. Morgan,* 2 *Haz. U. S. Reg.,* 57.

A careful examination of the prayers will show that the Court went far enough to direct the attention to the

proper inquiry as to the facts necessary to make a special partner liable under section 17 of Article 33 of the Revised Code.

The special partner, by section 12, is not allowed to interfere with the business; if he does he becomes a general partner. The special partner bargained for and got monthly balance sheets, which he and his brother examined. They talked to the bookkeeper. Surely the defendant went as far as he was obliged to go, by the law of limited partnership.

There are not many decisions on the law of limited partnership. A few. cases may be added. As to payment by check: *Woodville vs. Reed,* 26 *Md.,* 179, 190; *Moses vs. Franklin Bank,* 34 *Md.,* 580.

"A check does not * * * operate as an assignment *pro tanto* of the. fund upon which it is drawn, until it is accepted, or certified to be good by the bank holding the funds. * * * If * * the depositor should direct that a check should not be paid, the bank would be bound to observe the direction, *unless it had previously accepted the check by certifying it to be good, in which case it would be bound to·pay;* at any rate, to a subsequent holder." * * * "The drawee owes no duty to the holder *until the check is presented and accepted.*"

As to the sale of the partnership assets of the old firm to the new firm: *Glenn vs. Gill,* 2 *Md.,* 16—"Having then no lien by virtue of their debts merely, the partners may sell and dispose of the effects of the firm as they please, or as individual debtors may, for a fair and *bona fide* consideration, and their sales cannot be set aside by the creditors. One partner may sell to his copartner, and if the sale is fair, it will vest the exclusive title in his copartner." *Story on Part.,* 510; *Ex parte Ruffin,* 6 *Vesey,* 119, 126; *Ex parte Williams,* 11 *Vesey,* 3, 5, 8; *Sanderson vs. Stockdale, et al.,* 11 *Md.,* 573.

In (1877) *Lawrence vs. Merrifield,* 42 *N. Y. Superior Court,* (10 *Jones & Spencer,*) 37, affirmed in 73 *N. Y.,*

590, a special partner sold his goods to a general partner, and then put in the cash ; as a special partner held good. In (1874) *Pusey vs. Dusenbury,* 75 *Penn.,* (25 *P. F. Smith,*) 437, *held* a special partner's receipt of what he may believe due to him by an expired partnership, does not make him a general partner. In (1866) *Hayes vs. Heyer,* 35 *N. Y.,* 327, a special partner cannot claim a dividend on money loaned, but another firm in which the special partner is a general partner may have a dividend. In (1866) *Walkenshaw vs. Perzel,* 4 *Robertson,* (*N. Y. Superior Court,*) 427, loaning money to the firm does not make a special partner a general partner.

Difficulty in payment is not insolvency. The insolvency in this case was not made out. See 32 *Howard's Practice Rep.,* 233.

In (1882) *George vs. Grant,* 28 *Hun,* (35 *N. Y. Sup. Ct. Rep.,*) 69, it is *held* a mortgage made by a special partner when his firm was insolvent, is good for money advanced at the time.

MILLER, J., delivered the opinion of the Court.

Several questions arise on this appeal, and present, for the first time in this Court, the construction of certain sections of Article 72 of the Code, relating to "*Limited Partnerships.*"

The suit was brought by the appellant against Luther W. Hopkins, Charles T. Matthews and David W. Slagle, as partners doing business under the firm name of "Hopkins, Matthews & Co." This firm failed and made an assignment for the benefit of its creditors on the 29th of April, 1884. The cause of action sued on was a promissory note for $404, signed in the firm name, dated the 1st of April, 1884, and payable at thirty days to the order of "Lineweaver & Co.," of which latter firm the plaintiff was the surviving partner. There was no controversy as to the liability of Hopkins and Matthews, but Slagle set

up the defence that he was a *special partner,* and the effort of the plaintiff was to hold him responsible as a *general partner.* At the trial several exceptions were taken by the plaintiff to the rulings of the Court which present the real subjects of dispute, and these have been argued by counsel with much zeal and ability.

The testimony shows that on the 15th of March, 1880, these three parties, Hopkins, Matthews and Slagle, formed a partnership under the firm name of "Hopkins, Matthews & Co." to carry on a general commission business in the City of Baltimore, in which Slagle became a special partner and contributed $5000 capital. This partnership, by its terms, commenced on the 15th of March, 1880, and ended on the 14th of March, 1882, and in regard to its due formation no question arises. It is conceded that all the requisites and formalities required and prescribed by Article 72 of the Code, were duly followed and complied with. In this firm, Slagle was unquestionably a special partner merely, and not therefore liable for its debts beyond the $5000 which he had contributed to its capital. On the 15th of March, 1882, the day succeeding that limited for the duration of this partnership, the same parties executed and acknowledged the following certificate:

"Be it remembered, and it is hereby certified that we, Luther W. Hopkins and Charles T. Matthews, as general partners, and David W. Slagle, as special partner, and all residing in the City of Baltimore, in the State of Maryland, have formed and entered into a limited partnership under the name or firm of 'Hopkins, Matthews & Co.' and intend to transact a general commission business in the City of Baltimore. The said David W. Slagle *has contributed* $10,000 *to the capital of the firm,* and the partnership is to commence on the 15th day of March, 1882, and is to terminate on the 28th day of February, 1885."

This certificate was duly recorded, and the "terms of the partnership" duly published in the newspapers; and it has been contended by counsel for the appellee that this partnership is to be regarded as a "renewal or continuance" of the one which it succeeded. But we think it clear that this position cannot be sustained. The law has made special provisions for such "renewal or continuance," and where that is the object to be accomplished, these provisions must be followed. By section nine it is declared that "every renewal or continuance of such partnership beyond the time originally fixed for its duration, shall be certified, acknowledged and recorded; and an affidavit of a general partner be made and filed, and notice be given in the manner herein required for its original formation; and every such partnership which shall be otherwise renewed or continued, shall be deemed a general partnership." And by section ten it is provided that "every *alteration* which shall be made in the names of the partners, in the nature of the business, *or in the capital* or shares thereof, or in any other matter specified in the original certificate, shall be deemed a dissolution of the partnership; and every such partnership which shall in any manner be carried on after any such alteration shall have been made, shall be deemed a general partnership, unless renewed as a special partnership under the provisions of the last preceding section." The necessities of this case do not require us to decide what must be the *form* of the certificate for "renewal or continuance" under these sections. It is sufficient to say, that the change in the *amount* of the capital to be contributed by the special partner from $5000 to $10,000, makes this in legal contemplation, a new partnership, and not a renewal or continuance of an old one; and such would naturally be the conclusion reached by any one who might read this certificate on the records, or see in the newspapers the publication of the "terms of the partnership" in com-

formity therewith. From the information thus derived, no one could for a moment suppose that it was the intention of the parties to renew or continue an old firm. We are therefore clearly of opinion, that Slagle's right to hold the position of a special partner in *this partnership*, is in no wise aided, or affected by the fact, that he was such in the old one. So far as his rights in this respect are concerned, they must be treated and dealt with as if this certificate was in fact, as it is in law, the formation of a new and original partnership.

The next question is, did Slagle contribute and pay the $10,000 as the law requires, so as to entitle him to the *status*, and immunity of a special partner? In various sections of this Article, it is provided that the special partner "shall *contribute* in *actual cash* payments a specific sum as capital to the common stock;" that a certificate shall be executed, acknowledged and recorded, which shall state among other things, "the amount of capital which each special partner *shall have contributed* to the common stock;" that at the time of filing this certificate, there shall also be filed an affidavit of one or more of the general partners, "stating that the sums specified in the certificate to have been *contributed* by each of the special partners to the common stock, have been actually *and* in good faith paid in *cash;*" that "if any false statement shall be made in such certificate or affidavit, all the persons interested in such partnership, shall be liable for all the engagements thereof as general partners;" and that "the partners shall publish the terms of the partnership when registered, for at least six weeks immediately after such registry, in two newspapers to be designated by the clerk of the Court in which such registry shall be made."

These are some of the conditions which the Legislature has seen fit to attach to the privilege of participating in the profits of a partnership, without absolute liability for

its debts. One of the objects they are intended to attain, is notice to the public of the exact terms of the partnership, so that those who deal with it may do so advisedly. Another, and the most important, is that the contribution by the special partner shall be made in actual cash. This also has in view the protection of the public. "Its object is to provide a fund on the day the company is formed, to be thereafter subject to no contingencies or losses, except those which come from the proper business of the partnership," (103 *Mass.*, 19,) and wherever the question has arisen, the Courts have uniformly exacted a strict compliance with this condition. The contribution cannot be made partly in cash, and partly in goods, credits, or assets of another firm taken at a valuation, nor will government bonds, or any other class of commercial securities, no matter how valuable they may be, or how easily convertible into money, be accepted as a substitute for the "actual cash payments," which the statute requires. *Haviland vs. Chace*, 39 *Barb.*, 283 ; *Pierce vs. Bryant, et al.*, 5 *Allen*, 91; *Haggerty, et al. vs. Foster*, 103 *Mass.*, 17 ; *Richardson vs. Hogg*, 38 *Penn. State Rep.*, 153 ; *In re Merrill, et al.*, 12 *Blatchford*, 221 ; *Van Ingen vs. Whitman, Bankrupts*, 62 *N. Y.*, 513. Nor is it material that the parties may have acted in good faith, and have honestly intended to comply with the law, and have honestly supposed the transaction did gratify the statute, for, as was said by Folger, J., in the case last cited : " The statement of the amount of the cash payment is required so that the public may gauge thereby the extent of its dealings with the firm. The affidavit is called for, that the public may have reliance upon the existence of the fact of payment. The statute is thwarted, the public is misled and deceived, as much when there is an unintentional untruth, as when there is an intentional one. This statute does not set out to deal with motives, but with acts and their results ; and it guards the public, not

by requiring good intentions, but a certain act done in a certain mode, and a true statement that it has been thus done." To the same effect is the decision in the Massachusetts' case, (103 *Mass.*, 17,) where it was held that government bonds could not be regarded as equivalent to cash within the meaning of the statute. "It is wholly immaterial," say the Court, "that the transaction at the time was honestly intended and understood by the parties to be sufficient; that the securities actually transferred afforded the means by which their cash value was in fact, subsequently realized; or that creditors were not actually defrauded. The statute is plain and explicit. The use of the phrase, 'actual cash payment,' is emphatic and significant. It is wisely intended to exclude a construction by which commercial securities of any description may be regarded, by the aid of mercantile usage, as substantially equivalent to cash; and to remove from all parties the temptation to evade its requirements in this respect."

This brings us to an examination of the facts attending the alleged contribution and payment of the $10,000. The proof shows that on the 15th of March, 1882, the day on which the certificate was signed, and at about 10 o'clock, a. m., Slagle gave to the firm of "Hopkins, Matthews & Co." a certified check on the Citizens' National Bank, for $10,000, which was soon afterwards deposited by the firm and passed to its credit; that in a few hours, and on the same day, between two and three o'clock, p. m., the firm gave Slagle its check on the same bank for $6500, and that three days afterwards the firm, by another check, paid him the sum of $1119.16. There is further proof to show that the old firm kept their account in the same bank, and that on the 15th of March, 1882, and prior to the deposit of Slagle's check, that account was overdrawn to a small amount, and that on that day and the next, neither the old firm nor the new one, nor Hopkins and Matthews, the general partners in both,

had any money in bank out of which the $6500 check could be paid, save that which was derived from Slagle's check for $10,000. Assuming then that these were the facts, or that a jury would so find from the evidence, the transaction amounted simply to this, that Slagle on the morning of the 15th of March, 1882, paid in his $10,000, and a few hours afterwards on the same day $6500 of the same money was paid back to him. Now we take it to be too plain for argument that this was not such a "contribution" of $10,000, "to the common stock" of the firm that day formed, as the law requires. In no legitimate sense of the word can the paying of money one hour and receiving it back the next, be said to be a "contribution" of it for any purpose whatever. We hold it to be clear that to gratify the statute the special partner must pay his money into the common stock and *leave it there* to the risks of the business. The payment and devotion of the money to the business of the firm must be actual and absolute, not apparent and illusory. If the terms referred to, leave any doubt that this is what the statute means, that doubt must be removed by the thirteenth and fourteenth sections, in which it is expressly declared that "no part of the sum which any special partner shall have contributed to the capital stock, shall be withdrawn by him, or paid or transferred to him in the shape of dividends, profits, or *otherwise,* during the *continuance of the partnership,*" and if by payment of interest or profits, his capital shall be reduced, he "shall be bound to restore the amount necessary to make good his share of capital, with interest."

But the appellee has explained why these sums of $6500, and $1119.16 were thus paid back to him immediately upon the formation of the new partnership. That explanation, as we gather it from the record, is substantially as follows: There is proof to show that at the termination of the old firm, its books were balanced, and

taking the accounts at their face value there stood to the credit of Slagle as special partner in that firm $5000 capital, and $2619.16 profits, aggregating $7619.16, the precise amount paid to him by the two checks of the 15th and 18th of March, 1882; that in the partnership articles of the old firm there was one to the effect that on its expiration, the general partners should purchase all the fixtures, tools, and implements used in the prosecution of its business, then on hand; that the assets of the old were taken by the new firm at an estimated value which was guaranteed by the old firm; that all the debts and liabilities of the old firm were paid as its assets were collected, and a balance was left of such assets sufficient to pay back to Slagle all his capital and profits except the sum of $609.52; and that this deficiency was charged against him in the accounts of the new firm. There is also proof that at the time the books of the old firm were thus balanced, the cash thereby appearing to be on hand was theoretical merely, and that the actual cash was scattered all over the country in the shape, (as we infer,) of debts and accounts due the firm; that these were not collected until some time after, (precisely how long is not stated,) the new firm had been in operation; and that all of them never were collected, for when the affairs of the old firm were liquidated there was a deficiency in the estimated value of these assets to the extent of $1828.56. Now assuming as true all the facts above stated that can be regarded as favorable to the appellee, we do not think his case is placed in any better *legal* position. The fact still remains that the $10,000 was not contributed *in cash* as the law requires. The sum of $2380.84 only was so contributed, while the balance, amounting to $7619.16, was, in fact, represented by his interest in the uncollected and unrealized assets of the old firm, taken at a valuation which was guaranteed by that firm. In our judgment this cannot be accepted as an equivalent for the cash which

the law requires, without ignoring all the decisions upon the subject, as well as the plain meaning of the statute itself. In our opinion the requirement that the special partner shall "contribute" a specific sum "in actual cash," was made by the Legislature for the very purpose of preventing such transactions. The statement, therefore, in the certificate and affidavit, that Slagle had made this contribution of $10,000, was, in legal contemplation, "a false statement" no matter in what good faith or with what honest intentions he and his associates may have acted.

It follows from what has been said that the Court was right in rejecting the defendant's fifth prayer, but wrong in granting the third in lieu of it, and also in rejecting the plaintiff's second and fifth prayers.

·The defendant's fourth prayer, as we read it, simply asserts the proposition, that payment by a certified check on a bank in good standing, and which the bank actually pays, is a good *mode* of payment under the law of limited partnership, and that the *mere* fact that a special partner has paid his contribution by such a check, does not make him a general partner. Taking this to be the· *sole* effect of that prayer, we have no fault to find with it. When a bank certifies a check to be good, it is bound to pay it when presented by the payee, (if he be other than the drawer,) or by any subsequent holder; and if a check be given *bona fide* on a banker having funds to pay it, it is in this State *prima facie* payment, if accepted as cash. *Moses vs. Franklin Bank,* 34 *Md.,* 581; *Woodville vs. Reed,* 26 *Md.,* 190.

The case also presents another question which involves the construction of the 15th, 16th and 17th sections. In section fifteen, there is a provision, that "every sale, assignment or transfer of any property or effects of such partnership made by such partnership, *when insolvent* or in contemplation of insolvency, or after or in contemplation of the insolvency of any partner, *with intent* of giving a

Lineweaver *vs.* Slagle.

preference to any creditor of such partnership, shall be void as against the creditors of such partnership." Section sixteen declares that "every such sale, assignment or transfer of any of the property of a general or special partner *when insolvent*, or in contemplation of insolvency, or after or in contemplation of the insolvency of the partnership, *with intent* of giving to any creditor of his own, or of the partnership, a preference over the creditors of the partnership, shall be void as against the creditors of the partnership." And by section seventeen, it is provided that "every special partner, who shall violate any of the provisions of the two last preceding sections, or who shall *concur in* or *assent* to any such violation by the partnership, or by any individual partner, shall be liable as a general partner."

It appears from the proof, that on the 24th of April, 1884, only five days before the firm failed, Hopkins and Matthews conveyed a house and lot which belonged to the firm and stood in their names, to the firm of "Charles W. Slagle & Co.," of which the appellee was a member, for the consideration of $2485.62, of which $1985.62 consisted of loans with interest thereon, previously made by Slagle & Co. to the grantors. In reference to this transaction the appellant insists, that if at the time this deed was made, the firm, and Hopkins and Matthews, *were in fact insolvent*, or unable to pay all their debts as they fell due in the regular course of business, and if Hopkins and Matthews knew the true condition of the firm, or could by the exercise of reasonable diligence have discovered it, and if Slagle also knew the true condition of the firm, and of Hopkins and Matthews, or could have discovered it by the exercise of reasonable diligence, without interfering with the conduct of the firm's business, then the deed was made *with the intent to prefer* the grantees therein, and having been made to Slagle himself and others, it must be presumed to have been made with his concurrence. And

he therefore, by virtue of this seventeenth section, became liable as a general partner. This is the substance of the plaintiff's seventh prayer. The legal proposition asserted is that upon the facts stated, the law *presumes* the intent to prefer, and that such intent need not be proved as an independent fact. This prayer was granted, and in our opinion, this ruling correctly construes these sections of the statute. If a man is actually insolvent, and knows it, or by the exercise of reasonable diligence could know it, and deliberately conveys a portion of his property to one of his creditors, and thereby pays in full that creditor's claim, the necessary effect is to prefer that creditor, and from such an act the law conclusively presumes the intent to prefer. As was said by our predecessors, in the case of *Gardner vs. Lewis*, 7 *Gill*, 404, "Whatever is the necessary consequence of an act deliberately done, *that* the law presumes every man to intend. When the effect of an act, understandingly done, is necessarily injurious to the rights of another, the *quo animo* is not a matter of fact, it becomes an inference of law." So also in the case of *Whedbee, et al. vs. Stewart, et al.*, 40 *Md.*, 424, where the Act of 1864, ch. 306, which gives creditors the remedy by attachment against a debtor who has assigned or disposed of his property "with the intention of defrauding his creditors," came up for construction, the Court applied the same rule, and said where a conveyance by its terms operates to hinder, delay or defraud creditors, the intent to do so is *imputed* to the parties." Again, the same rule is emphatically announced in the case of *Ecker vs. McAllister*, 45 *Md.*, 309, where the Court say, "When the probable consequence of an act is to give a preference, the debtor will be conclusively *presumed* to have intended to give such preference." These decisions are quite sufficient to conclude this question. The defendant's seventh prayer on the same subject ought to have been rejected. It is defective not only in submitting this question of in-

tent to the finding of the jury, but also in omitting the requirement of the exercise of reasonable diligence on the part of these partners to discover the true condition of their firm. At the time and under the circumstances attending the execution of this deed, they were bound to make diligent inquiry as to the solvency or insolvency of the firm. That Slagle must be presumed to have assented to this transaction, does not seem to be a matter of doubt. The deed was made to a firm of which he was a member, and he was therefore one of the grantees. Moreover his own seventh prayer concedes that he knew of its execution and assented thereto. The same question arises, and the same rulings were made, as to the preference also given to Slagle & Co. by payment to them of $150, on account of a pre-existent debt, on the 29th of April, 1884, the very day on which the firm failed. The plaintiff's tenth and the defendant's eighth prayer refer to this transaction. The former was properly granted, and the latter should have been rejected.

All that need be said as to the Court's ruling upon the question of evidence is, that that part of the testimony of these partners in which they say that they had *no intention* to give a preference, either by the deed of the 24th, or the payment of the 29th of April, was inadmissible. Where the law imputes the intent from the acts done by a party, his testimony as to what his intention was in doing the act, cannot be received in evidence. This was expressly decided in the case of *Ecker vs. McAllister* already referred to.

The only remaining question in the case is that which relates to the payment to Slagle of the $1000 note which was secured by a *mortgage* on a market stall, executed in November, 1881, *before* this partnership was formed. In view of what we have already decided, it is hardly possible that it will be necessary to raise this question on the new trial, and we therefore refrain from expressing any

definite opinion upon it. All that need be said is that it is extremely doubtful whether such a transaction is in any way affected by any of the provisions of this Article of the Code. Our decision upon the other points requires a reversal of the judgment, and a new trial of the case.

*Judgment reversed, and*
*new trial awarded.*

(Decided 29th January, 1886.)